IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARLES SULTAN, # A-93755,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 15-cv-611-JPG |
| ) | |
| **STEVEN DUNCAN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims arise from a humiliating strip search, cell shakedown, and related conduct on the part of the "Orange Crush" Tactical Team at Lawrence on July 7, 2014. The 68 named Defendants include Lawrence Warden Duncan, Assistant Wardens Moore and Treadway, and Director Stolworthy of the Illinois Department of Corrections ("IDOC") (Doc. 1, pp. 1, 9). Sixty-three named officers are alleged to be members of the Orange Crush Team assigned to Lawrence (Doc. 1, p. 8). The last Defendant is Gluonsy, whose name appeared on a shakedown slip given to Plaintiff after his cell was searched (Doc. 1, p. 10).

Plaintiff's complaint tracks the pleading in *Ross v. Gossett, et al.*, Case No. 15-cv-309-SMY-PMF, which was filed in this Court on March 19, 2015. Plaintiff Ross in that case is seeking injunctive relief and damages on behalf of himself and the class of prisoners that were subjected to similar strip searches while incarcerated at Lawrence and three other prisons during 2014. Should the *Ross* class be certified, Plaintiff Sultan would be a member of the class. Based

on factual allegations very similar to those in the *Ross* complaint, Plaintiff herein raises identical legal claims as did Ross.

Plaintiff's housing unit at Lawrence was searched by the Orange Crush officers starting at about 9:00 am on July 7, 2014. The officers included both males and females, and they did not wear name badges. Plaintiff was able to identify one Orange Crush member by sight as Defendant Akeem Hamilton, and he obtained the name of another (Defendant Gluonsy) from the signature on his shakedown slip (Doc. 1, p. 10). He recognized another Orange Crush officer from a previous encounter, but could not identify him by name. It appears that Plaintiff obtained other Defendants' names from the *Ross* complaint.

The Orange Crush team commenced the search by yelling, whooping, and hitting their batons on the walls as they entered the housing wing. Three officers lined up in front of Plaintiff's cell and yelled for the prisoners to "get asshole naked!" (Doc. 1, p. 11). Plaintiff and the others were made to bend over with their backs to the officers, spread their buttocks, lift each foot off the ground, and then turn around to face the officers and lift their genitals. Immediately after this, Plaintiff was ordered to open his mouth with his fingers. He had to perform these actions in front of female officers. Plaintiff was then ordered to put on pants, shirt, and shoes while the strip search of other inmates continued.

Plaintiff and others were next ordered to face the wall and "keep [their] f***ing heads down" while handcuffs were applied tightly in a particularly painful position (palms facing outward and thumbs pointed up) (Doc. 1, p. 12). When Plaintiff complained that the cuffs were cutting into his wrist, an officer hit him (Doc. 1, p. 10). Plaintiff attempted to tell Defendant

Hamilton and another Orange Crush officer[1] that he had just had carpal tunnel surgery on the handcuffed area. Defendant Hamilton hit Plaintiff in the back of the neck, saying, "We told you not to talk or look at us." *Id*. The unknown Orange Crush Officer Defendant struck Plaintiff in the stomach.

The handcuffed inmates were ordered to line up with each man facing the back of the man in front of him. The Orange Crush Defendants repeatedly chanted "Punish the Inmates" while hitting their batons on their own hands (Doc. 1, p.1 3). The Defendants then grabbed the back of each prisoner's head and slammed it into the back of the prisoner standing ahead of him in line. Plaintiff's head was slammed down so violently that his glasses broke and fell to the ground, and he suffered dizziness and light-headedness. Plaintiff and the other inmates were forced to stand so close to each other in line that each man's genitals were in direct contact with the buttocks of the man ahead of him in line (referred to by the Orange Crush Defendants as "nuts to butts"). *Id*. While in this position, one or more Orange Crush Defendants shoved his baton in between Plaintiff's legs and jerked it upward, forcing him to straighten his legs and bend forward onto the prisoner in front of him. Plaintiff and the others were made to march in this formation to the chow hall, while Defendants yelled that they had better not see any light between the inmates in line.

During the march, each time a prisoner lifted his head off the back of the person in front, the Defendants violently slammed his head down or yanked him out of line for further physical abuse (choking or jabbing with batons) (Doc. 1, p. 14). In the chow hall, the Orange Crush Defendants ordered Plaintiff and others to stand facing the wall. Plaintiff, who is 66 years old, was made to stand in this stress position for several hours, while Defendant Hamilton yelled,

---

[1] Plaintiff refers to this officer as a "John Doe" Defendant, however, he does not include this unidentified party among his listed Defendants. After Plaintiff identifies this person, he may amend his complaint accordingly.

"This is punishment for all your sins!" (Doc. 1, p. 15).  They were forbidden to request medical attention, water, or a bathroom break.  They were threatened with segregation if they complained about the tight handcuffs.  Several hours later, Plaintiff and the others were marched back to their cells in the same formation.

Upon returning to his cell, Plaintiff found that it had been "tossed" and his property strewn about.  Some of Plaintiff's legal documents and other property was taken, even though it was not contraband and had been purchased at the prison commissary.

During and since these events, Plaintiff has suffered from severe headaches, neck and back pain, dizziness, light-headedness, and blurred vision.  He was denied medical attention for these symptoms (Doc. 1, p.1 7).

Plaintiff asserts that the strip search and movement of inmates between the cell block and chow hall were purposely conducted in a humiliating manner (Doc. 1, p. 18).  Further, the Orange Crush Defendants executed the procedures pursuant to a policy or practice that was "implemented, overseen, and encouraged by IDOC supervisors," including Yurkovich,[2] and Defendants Duncan, Moore, Baylor, Zollars, Tanner, Gilreath, Ochs, Stout, Yonaka, Ginden, Ausbrook, Brant, Willis, Gosnell, Lockhart, Tribble, Gangloff, Thomason,[3] Eckelberry, Line, Milam, Buchanan, Hamilton, Volk, Perkins, K. Brooks, Mullin, Mays, Richey, and Berry. *Id.*

Plaintiff seeks an injunction to forbid the infliction of this type of abuse in future searches.  He also seeks compensatory and punitive damages.

---

[2] Yurkovich's name does not appear in the case caption or among the listed Defendants in Plaintiff's complaint.  He is mentioned only in the statement of claim, where his name is included among a list of "IDOC Supervisors." (Doc. 1, pp. 18, 22-23).  He is not included as a party to this action.  If Plaintiff wishes to assert claims against him, he must submit a proper amended complaint, identifying this individual and stating facts to support any claims against him.

[3] Defendant Mary Ellen Thomason (Doc. 1, pp. 8, 18) was inadvertently listed on the Court's docket sheet as Mary Ellen "Thomas."  The Clerk shall be directed to correct the error.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

In the complaint, Plaintiff articulates the following colorable federal causes of action. These are identical to the claims set forth in the *Ross* complaint, which are now under consideration by the Court. Accepting Plaintiff's factual allegations as true, these claims merit further review:

> **Count 1:** Eighth Amendment claim against all Defendants for inflicting unnecessary physical and emotional pain and suffering upon Plaintiff during the strip search, shakedown and related actions;
>
> **Count 2:** Conspiracy under 42 U.S.C. § 1983, in that Defendants agreed to deprive Plaintiff of his constitutional rights and protect one another from liability for their actions;
>
> **Count 3:** Eighth Amendment claim for failure to intervene to prevent the violation of Plaintiff's constitutional rights;
>
> **Count 4:** Violation of the Prison Rape Elimination Act, 42 U.S.C. § 15607.

In addition, (as in *Ross*) Plaintiff brings one state law claim, which shall also proceed for further consideration:

> **Count 5:** Intentional infliction of emotional distress.

Based on the facts outlined by Plaintiff, it appears unlikely that each and every one of the 63 alleged members of the Orange Crush team forced Plaintiff to strip off his clothes and expose his genitals to them, struck him, or otherwise personally inflicted pain on him. However, it is plausible that any of them may have failed to protect Plaintiff from the violations committed by others. Further, because the Orange Crush Defendants concealed their identities during the events complained of, it is not appropriate to dismiss any of them from the action at this time.

**Count 1 – Cruel and Unusual Punishment**

Strip searches that are not related to legitimate security needs or are conducted in a harassing manner in order to humiliate and inflict psychological pain, may be found unconstitutional under the Eighth Amendment. Further, even if a valid penological reason existed for the search, "the manner in which the searches were conducted must itself pass constitutional muster." *Mays v. Springborn*, 719 F.3d 631, 634, (7th Cir. 2013) (group of inmates were strip searched together, gratuitously exposing prisoners' nude bodies to each other, while guards uttered demeaning comments) (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)); *Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (a strip search conducted in a harassing manner intended to humiliate and inflict psychological pain could violate the Eighth Amendment); *see also Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir. 1987) (allegation of calculated harassment by strip searches stated Eighth Amendment claim), *cert. denied*, 484 U.S. 935 (1987).

Under the above authority, even though there may have been a valid reason for the search, the manner in which it was conducted by the Orange Crush Defendants indicates that Plaintiff's claims related to the strip search should proceed for further review.

Further, the intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious

bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). Plaintiff's claims related to the physical force used against him, as well as being forced to place his genitals in contact with other prisoners' buttocks, and to stand in a painful stress position for an extended period of time, also merit further consideration.

Plaintiff includes two supervisors (Defendants Duncan and Moore) in this claim. They cannot be held liable for the actions of the Defendants who carried out the search and inflicted other abuse merely because they held supervisory authority. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (the doctrine of *respondeat superior* is not applicable to § 1983 actions). However, Plaintiff alleges more – according to the complaint, the Orange Crush Tactical Team Defendants executed the strip search and shakedown pursuant to a policy or practice implemented and overseen by Defendants Duncan and Moore.

Where a defendant has been alleged to have directed the conduct or to have given knowing consent to the conduct which caused the constitutional violation, that defendant has sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the violation. *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001); *McPhaul v. Bd. of Comm'rs of Madison Cnty.,* 226 F.3d 558, 566 (7th Cir. 2000). A defendant in a supervisory capacity may then be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates. *Sanville*, 266 F.3d at 740 (discussing *Chavez*, 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")). At this stage of the case, Plaintiff may proceed on the claim in **Count 1** against all Defendants.

**Count 2 – Conspiracy**

Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under section 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002). The complaint satisfies the legal standard for stating a civil conspiracy claim, as it pertains to Plaintiff's claim that Defendants conspired to violate his constitutional rights, and then to protect one another from liability for their actions. **Count 2** may also proceed for further review.

**Count 3 – Failure to Intervene**

In this count, Plaintiff states that each of the Defendants had a reasonable opportunity to prevent other Defendants from violating Plaintiff's constitutional rights, yet failed to do so. An officer who fails to intervene when s/he witnesses another officer using excessive force against a prisoner may be held equally liable for the constitutional violation. *See Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F.2d 480, 491 (7th Cir. 1987). Plaintiff may therefore proceed with the claim in **Count 3** as well.

**Count 4 - Violations of the Prison Rape Elimination Act, 42 U.S.C. § 15607**

Plaintiff alleges that Defendants have violated this federal statute by their use of cross-gender strip searches. Further, their treatment of Plaintiff during the strip search and while forcing him to line up and have bodily contact with other prisoners constituted sexual abuse and harassment in violation of the Act. Defendant Stolworthy has failed to provide a procedure for

inmates to report sexual abuse and harassment, or for complaints to be properly investigated. At this stage, Plaintiff may also proceed with this claim.

**Count 5 – Intentional Infliction of Emotional Distress**

Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla*., 100 So. 2d 396 (Fla.1958)). *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*, 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp*., 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

Plaintiff asserts that Defendants' actions described in his complaint were extreme and outrageous, were intended to inflict severe distress, and did in fact cause Plaintiff to suffer severe emotional distress as well as other injuries (Doc. 1, p. 32). He has thus met the pleading requirements to proceed with the claim in **Count 5**.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United

States Magistrate Judge for further consideration.

**Disposition**

The Clerk is **DIRECTED** to correct the surname of Defendant Mary Ellen "Thomas" to Mary Ellen **THOMASON**.

The Clerk of Court shall prepare for Defendants **DUNCAN, MOORE, TREADWAY, STOLWORTHY, McCORMICK, HAMILTON, GLUONSY, GILREATH, STOUT, MONICAL, LEWIS, BROWN, SAWYER, HARPER, GINDER, PATTERSON, BERRY, BAYLOR, CARROLL, STUCK, WEBER, WISE, DUST, CONRAD, CARTER, McALLISTER, ZOLLARS, TANNER, YONAKA, JOHNSON, JENKINS, CARLE, HARRINGTON, SHEHORN, KIDD, VAUGHN, OCHS, LIVINGSTON, KAMP, SENN, RALSTON, GOBLE, AUSBROOK, HOUGH, BRANT, CLARY, WINKA, DEAN, LAMPLEY, WILLIS, CONRAD, CALES, GOSNELL, LOCKHART, TRIBBLE, GANGLOFF, THOMASON, ECKELBERRY, LINE, MILAM, BUCHANAN, VOLK, PERKINS, BROOKS, CHENAULT, MULLIN, MAYS,** and **RICHEY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if

not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give

security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 1, 2015**

*s/J. Phil Gilbert*
United States District Judge
